UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
:
EQUAL EMPLOYMENT OPPORTUNITY              :
COMMISSION,                                :
:
                      Applicant/Petitioner,   :         23-MC-278 (VSB)
:
      - against -                           :         **OPINION & ORDER**
:
:
MTV FOOD, INC. d/b/a AUSTIN MEAT           :
COMPANY,                                   :
:
                           Respondent.   :
-----------------------------------------------------------X

Appearances:

Lindsay Sfekas
Andres F. Puerta
Equal Employment Opportunity Commission
New York, NY
Newark, NJ
*Counsel for Applicant/Petitioner*

Nancy V. Wright
Joseph Benincasa, IV
Stefanie Lynn Shmil
Wilson Elser Moskowitz Edelman & Dicker LLP
New York, NY
*Counsel for Respondent*

VERNON S. BRODERICK, United States District Judge:

       The Equal Employment Opportunity Commission ("Petitioner" or "EEOC")[1] brings this action to enforce an administrative subpoena against MTV Food, Inc. d/b/a Austin Meat Company ("Respondent" or "Austin Meat"). (Doc. 1.) The petition is **GRANTED** because I find that: (1) the information requested in the administrative subpoena is relevant to the EEOC's

---

[1] The EEOC's Petition refers to itself as "Applicant" in the caption, (Doc. 1 at 1), but in most other cases refers to itself in its papers as "Petitioner." Thus I will use the term "Petitioner" to refer to the EEOC.

investigation, (2) there is no basis for Respondent to withhold the requested information from the EEOC on confidentiality grounds, (3) Respondent has not demonstrated production of the requested information would pose an undue burden, and (4) Respondent has not provided documents fully responsive to the EEOC's request for all documents related to the end of Watson's employment.

### I. Factual Background

Austin Meat, located in the Bronx, New York, is a large wholesale meat and seafood distributor with operations spanning the East Coast. (Riera Decl., Ex. D.[2]) Although this action began with an EEOC investigation into a charge filed by Francine Watson against Austin Meat, the EEOC also submits a charge related to a different Austin Meat employee which was filed after Watson filed her charge, and I detail both charges here.

#### A. The Watson Charge

On June 27, 2022, Francine Watson filed a charge with the EEOC against Austin Meat alleging discrimination based on age, race, retaliation, and sex. (Watson Charge.[3]) Watson is a black female who began working as a seafood clerk at Austin Meat in April 2021, and at the time she filed her charge she was 56 years old. (*Id*. at 6.) She alleges in her charge that the discrimination she faced began during her initial job interview, during which one of the owners of Austin Meat entered the room and began to make discriminatory remarks about her race and national origin, such as that she was "too dressed up for the interview," and commented on her afro hair style. (*Id*.) Watson's charge alleges that she has experienced similar comments and disrespect throughout her employment. (*Id*.) For instance, she claims the same owner refused to

---

[2] "Riera Decl." refers to the Declaration of Timothy Riera, Acting District Director of the New York EEOC. (Doc. 4.) "Ex. D." refers to Exhibit D of the Riera Declaration, Austin Meat's position statement in response to the EEOC's investigation. (Doc. 4 at 15–29.)
[3] "Watson Charge" refers to Francine Watson's EEOC Charge of Discrimination, attached to the Riera Declaration as Exhibit A. (Doc. 4 at 5–7.)

call her by her full name and instead called her "Flo," told her she "was nothing at the company and [that] he could do what he wanted," said to her at a company dinner words to the effect of "I can't believe they let black people in here," and assigned her tasks that he knew she would be unable to complete. (*Id.*) The Watson Charge further alleges that "multiple staff members have quit or been terminated due to the [discriminatory] conduct of the owner," and that "many of these staff members report the conduct to their supervisors or the owners" without receiving a response. (*Id.*) Watson's charge alleges she was constructively discharged after an altercation with the owner where he got in her face and said something to the effect of "I can't believe you are still working here as Blacks and Jews don't get along." (*Id.*) She alleges that "based on [her] contacts with other coworkers [she] believe[s the owner's] discrimination, harassment, and sexual harassment has continued against other individuals within the company" since she left. (*Id.*)

### B.   The Vasquez Charge

On January 11, 2023, Felisha Vasquez filed a charge with the EEOC against Austin Meat alleging discrimination based on color, disability, national origin, race, and retaliation. (Vasquez Charge.[4]) Vasquez is a Puerto Rican woman with a disability[5] who began working as Austin Meat as a receiving clerk on July 1, 2021. (*Id.*) Vasquez's alleges she experienced derogatory comments at Austin Meat. For example, she alleges that the company's "owners and management" made comments "insinuating that Puerto Ricans were dangerous" and suggesting specifically with regard to Vasquez that she "would pull out a switch blade on a few occasions when [she] was upset," and accused her "of being a gossip or a 'typical female'" when she would

---

[4] "Vasquez Charge" refers to Felisha Vasquez's EEOC Charge of Discrimination, attached to the Riera Declaration as Exhibit B. (Doc. 4 at 9–11.)
[5] The Vasquez Charge does not specify Vasquez's disability. (Doc. 4 at 10.)

3

discuss the alleged harassment with her coworkers. (*Id*.) Vasquez alleged she was paid less and treated less favorably than other workers because of her sex, race, national origin, and disability, and that she was denied a job as a sales clerk and told it was because "Spanish people do not do well at sales." (*Id*.) She also claims in her charge that she was denied a reasonable accommodation (a new office chair) for her disability. (*Id*.) Further, Vasquez's charge mentions that she "heard that others had been subjected to harassment due to their sex and race," referencing as an example the company owner's derogatory comment to Watson during the company dinner. (*Id*.) The Vasquez Charge alleges Vasquez's employment was terminated in October 2022 after she filed an internal complaint of discrimination. (*Id*.)

## II. <u>Procedural History</u>

The EEOC began investigating the Watson Charge shortly after it was filed in late June 2022. In connection with the investigation, in August 2022 the EEOC requested Austin Meat to provide it with information related Watson and its other employees. Two of the EEOC's requests and Austin Meat's responses are the subject of the petition.

*First*, EEOC's Request 1 ("Request 1" or "Spreadsheet Request") sought an Excel spreadsheet of all of Austin Meat's employees from April 2020 to present with the following information: full name, date of birth, sex, race, date of hire, job title, department, name of supervisor, date of employment termination (if applicable) and whether the employment termination was voluntary, reason for any involuntary employment termination, and the employee's last known contact information (street address, phone number, and email address). (Riera Decl., Ex. C.[6]) In response, Austin Meat sent the EEOC a PDF spreadsheet listing some, but not all, of the requested information. (Riera Decl., Ex. D, at 39.) In particular, the PDF

---

[6] Exhibit C of the Riera Declaration is the EEOC's first request for information to Austin Meat. (Doc. 4 at 12–14.)

4

spreadsheet omitted each employee's date of birth, job title, name of supervisor, and last known contact information. (*Id.*) Although the spreadsheet included a column denoting each employee's ethnicity (*i.e.*, "African American," "Dominican," "Ethiopian," "Italian," etc.), which the EEOC did not request, it did not include a separate column for the employee's race, which is conceptually related to but distinct from the employee's ethnicity. (*Id.*)

In response to Austin Meat's production, an EEOC investigator reiterated its request to Austin Meat, and the company responded that it omitted some information because of privacy concerns and objected to having to comb through individual employee files to produce the information in spreadsheet form. (Riera Decl., Ex. F, at 62–63; *id*. Ex. H, at 76–77.[7]) As to privacy, the EEOC explained its duty to protect the confidentiality of its investigations and argued that confidentiality was not a valid ground to object to produce information. (*Id.*) With regard to the burden of reviewing individual files, the EEOC responded that Austin Meat could produce all its employee files and that the EEOC would compile the requested information. (*Id.*) In reply, Respondent reiterated its objections and refused to submit the employee files as a substitute. (Riera Decl., Ex. H, at 69.)

*Second*, EEOC's Request 9 ("Request 9" or "Termination Request") sought "all documents (including email, text, and chat) related to [Watson's] termination." (Riera Decl., Ex. C.) Austin Meat responded that it did not terminate Watson, but that she instead abandoned her job, so it had no termination-related documents to provide. (Riera Decl., Ex. E, at 48.[8])

---

[7] Exhibit F of the Riera Declaration contains the January 2023 email exchanges between the EEOC and Respondent's attorney. (Doc. 4 at 62–65). Exhibit H contains the April 2023 email exchanges between the same parties. (*Id*. at 69–88.)
[8] Exhibit E of the Riera Declaration contains Respondent's supplemental responses following the January 2023 email exchanges. (Doc. 4 at 48–60.)

In May 2023, the EEOC served an administrative subpoena on Austin Meat to produce the information it had sought in Request 1 and Request 9. (Riera Decl., Ex. I, at 91.[9]) Austin Meat petitioned the EEOC to revoke the subpoena, arguing that the information sought was overbroad, irrelevant, would be unduly burdensome to produce, and that producing it would invade its employees' privacy rights. (Riera Decl., Ex. J, at 94–95.[10]) The EEOC denied the petition and ordered Austin Meat to respond to the subpoena. (Riera Decl., Ex. K.[11]) Through counsel, Austin Meat declined to comply with the order. (Riera Dec., Ex. L.[12])

On August 16, 2023, EEOC filed its petition to enforce compliance with the subpoena in this Court, along with a supporting memorandum of law and a declaration. (Docs. 1, 3, 4.) Respondent filed its opposition brief and a supporting affirmation on September 28, 2023. (Docs. 16, 17.) EEOC filed its reply the next day. (Doc. 18.)

### III. Legal Standard

When conducting its mandatory investigation into a charge of discrimination under Title VII, the EEOC "is entitled to 'any evidence of any person being investigated . . . that relates to unlawful employment practices covered by [Title VII] and is relevant to the charge under investigation.'" *EEOC v. Amazon.com Servs. LLC*, No. 24-MC-125, 2024 WL 3373514, at *2 (S.D.N.Y. July 11, 2024) (quoting 42 U.S.C. § 2000e–8(a)). Title VII "enables the EEOC to obtain that evidence by 'authorizing it to issue a subpoena and to seek an order enforcing the subpoena.'" *McLane Co. v. EEOC*, 581 U.S. 72, 76 (2017) (quoting *University of Pa. v. EEOC*, 493 U.S. 182, 191 (1990)) (alterations adopted). When, as here, an employer refuses to comply

---

[9] Exhibit I of the Riera Declaration contains the EEOC's subpoena No. NY-A23-007. (Doc. 4 at 90–91.)
[10] Exhibit J of the Riera Declaration contains Respondent's response to the EEOC's subpoena. (Doc. 4 at 93–95.)
[11] Exhibit K of the Riera Declaration contains the EEOC's administrative determination on Respondent's petition to revoke or modify subpoena No. NY-A23-007. (Doc. 4 at 97–109.)
[12] Exhibit L of the Riera Declaration contains July 2023 email exchanges between Respondent and the EEOC regarding the determination on Respondent's petition. (Doc. 4 at 112–114.)

with a subpoena after the EEOC has issued the subpoena and rejected a revocation petition, "the EEOC may ask a district court to issue an order enforcing it." *Id*.

A district court reviewing an EEOC petition to enforce an administrative subpoena should enforce the subpoena after "satisfy[ing] itself that the charge is valid and that the material requested is relevant to the charge," keeping in mind the "generous construction that courts have given the term 'relevant.'" *Id*. (cleaned up). "To obtain enforcement of an administrative subpoena, an agency must show only [1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the agency's possession, and [4] that the administrative steps required have been followed." *Amazon.com*, 2024 WL 3373514, at *2 (quoting *EEOC v. United Parcel Serv., Inc.*, 587 F.3d 136, 139 (2d Cir. 2009) ("*UPS*")). "A subpoena that satisfies these criteria will be enforced unless the party opposing enforcement demonstrates that the subpoena is unreasonable or that compliance would be unnecessarily burdensome." *Id*.

**IV.  Discussion**

The subpoena corresponds to the EEOC's Request 1, the Spreadsheet Request, and Request 9, the Termination Request. Respondent raises relevancy objections against each request. Additionally, Respondent argues the Spreadsheet Request imposes an undue burden, and the Termination Request seeks information already in EEOC's possession. With regard to both requests, Austin Meat does not challenge the legitimacy of the investigation's purpose or that the requisite administrative steps have been followed. I examine each request in turn.

7

### A. *Request 1 (The Spreadsheet Request)*

EEOC's Request 1 seeks production of an Excel spreadsheet[13] containing all of Austin Meat's employees from April 2020 to present with the following information: full name, date of birth, sex, race, date of hire, job title, department, name of supervisor, date of termination of employment (if applicable) and whether the employment termination was voluntary, reason for any involuntary employment termination, and the employee's last known contact information (street address, phone number, and email address).

#### 1. Relevance

EEOC's request for a spreadsheet of the demographic, employment, and contact information of Austin Meat's employees is relevant to its investigation of the Watson Charge. In this context, the Supreme Court has explained that "virtually any material that might cast light on the allegations against the employer" is "relevant" to the EEOC's investigation and therefore validly sought in an administrative subpoena. *McLane*, 581 U.S. at 76–77 (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68–69 (1984)). The EEOC is entitled to relevant information "regardless of the strength of the evidentiary foundation for those allegations" upon which the charge is based. *Shell Oil*, 466 U.S. at 72. In particular, when investigating a charge of systemic discrimination at an employer, the EEOC need not identify the particular employees it believes might have been discriminated against, because it "rarely can identify any single instance of discrimination until the Commission has gained access to the employer's personnel records." *Id.* at 71. "[A]t the investigatory stage, the EEOC is not required to show that there is probable cause to believe that discrimination occurred." *UPS*, 587 F.3d at 140.

---

[13] Although Austin Meat's partial production took the form of a spreadsheet in PDF format, an employer does not comply with a subpoena request for an Excel spreadsheet if it produces a non-sortable PDF spreadsheet. *Amazon*, 2024 WL 3373514, at *2 (explaining that a PDF spreadsheet did not comply with a subpoena that "specifically require[d] files to be produced in a sortable form, such as in spreadsheets").

8

Here, the Watson Charge alleged not only that Watson had been the target of disturbing discriminatory comments, but also that other Austin Meat employees had experienced similar comments and associated adverse employment actions. (Watson Charge.) In fact, Vasquez, who held a different position than Watson, alleged that she had similarly experienced discrimination at the company, and that she had heard about some of Watson's allegations at work. (*Id*.) The Watson Charge alone, and especially considered in conjunction with the Vasquez Charge, facially suggest "that there may be patterns of discrimination" at Austin Meat, and an investigation into these charges "naturally" would seek "personnel records" of other employees in order to determine whether Wason's allegations hold up. *EEOC v. Morgan Stanley & Co.*, 132 F. Supp. 2d 146, 161 (S.D.N.Y. 2000) (concluding EEOC's request for personnel records of other employees were relevant in investigation of charge alleging pattern of discrimination).

Respondent contends that EEOC's request for personnel information is irrelevant because, quoting *EEOC v. Austal USA, LLC*, honoring the EEOC's "request for 'sweeping information' based on the notion that the charging party 'might' be a part of a pattern or practice of discrimination would render the relevance requirement a 'nullity.'" (Doc. 16 ("Opp'n Br.") at 9 (quoting No. MC 17-00006, 2017 WL 4563078, at *10 (S.D. Ala. Aug. 18, 2017), *report and recommendation adopted*, No. MC 17-00006, 2017 WL 4562634 (S.D. Ala. Oct. 12, 2017)).) This out-of-circuit case is not controlling and is easily distinguishable. In *Austal*, the underlying charge alleged a single discriminatory determination and did not allege a pattern or practice. *See* 2017 WL 4563078, at *10. Here, on the other hand, both Watson's underlying charge and Vasquez's additional charge report that other employees were subjected to discrimination at Austin Meat—exactly the sort of unlawful pattern of discrimination that Title VII prohibits and empowers the EEOC to investigate. Since the Watson Charge on its face alleges a pattern of

9

Case 1:23-mc-00278-VSB   Document 20   Filed 09/12/24   Page 10 of 15

discrimination at Austin Meat, the company's personnel records are relevant information the EEOC may lawfully seek.

Austin Meat also argues that the requested information about its employees is "confidential and/or private" and therefore cannot be disclosed. (Opp'n Br. at 5 n.4; *see also id*. at 1–3, 3 n.2, 5.) The Supreme Court has considered and squarely rejected this precise argument, noting the statute's criminal penalties for disclosing investigation-related information which accompany the full-disclosure rule. *See University of. Pa.*, 493 U.S. at 192–93 (citing 41 U.S.C. § 2000e–8(e)). Therefore, this argument must be rejected as well.

Respondents do not address the *U. Penn.* case, and instead cite to a non-binding out-of-circuit case for the proposition that "employees have a privacy interest in [personnel information]; thus, employers have an obligation not to disclose such information to any third party." (Opp'n Br. at 5 n.4 (citing *EEOC v. Farmer's Pride, Inc.*, No. 12-MC-148, 2012 WL 5363145, at *9 (E.D. Pa. Oct. 31, 2012)).) The *Farmer's Pride* case, however, resolved an employer's request for an order preventing the EEOC from disclosing personnel information to the charging party and its attorneys. 2012 WL 5363145, at *7. The charging party and its attorneys are not covered by Title VII's prohibition against disclosure. *Id*. at *9. Further, in *Farmer's Pride*, the employer seeking a confidentiality order alleged that the charging party's law firm had a "history" of using employee contact information disclosed to the EEOC to call employees for purposes of soliciting business, and, in one case, "an attorney hound[ed] an employee at his house regarding court documents." *Id*. at *7. Austin Meat does not allege that it fears the EEOC, Watson, Vasquez, or any attorneys will engage in such similar conduct requiring a protective order here.

10

Indeed, Respondent does not request the relief discussed in *Farmer's Pride*—a protective order. Instead, in two identical footnotes and without citation to authority, it requests that I review the personnel information *in camera* before disclosure to the EEOC. (*See* Opp'n Br. at 3 n.2, 5 n.3.) To the extent Respondent requests that I draw on my "inherent equitable powers" to fashion a confidentiality order here, *Hunt v. Enzo Biochem, Inc.*, 904 F. Supp. 2d 337, 343 (S.D.N.Y. 2012), I decline to do so, as Respondent has not made "a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection," *Leib-Podry v. Tobias*, No. 22-CV-8614, 2024 WL 1134597, at *2 (S.D.N.Y. Mar. 15, 2024) (quoting *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009)).

### 2. Undue Burden

I also find that Austin Meat would not face undue burden in providing a fully responsive production of EEOC's Request 1. I note that although Respondent has already provided a spreadsheet with some of the information the EEOC has requested, the company has not produced the date of birth, job title, name of supervisor, race, or contact information that the subpoena seeks, nor has it produced the information in the requested Excel format. In briefing, Respondent argues that to complete its original and incomplete production, the company's office manager—its only employee capable of this task—spent two days compiling personnel data, and that it has spent over thirty thousand dollars in legal fees on this matter. (Opp'n Br. at 18.) The company thus argues that fully responding to the request would require it to accrue additional legal fees and divert more of the office manager's time. (Opp'n Br. at 17–18.) It also emphasizes that given the nature of its business and moderately high employee turnover, it would have to produce a spreadsheet of hundreds of employees. (*Id.* at 18–19.)

As the party opposing enforcement of the subpoena, Austin Meat must show that compliance would be "unnecessarily burdensome" to defeat the subpoena. *UPS*, 587 F.3d at

11

139. My review of whether a subpoena is unnecessarily or "unduly burdensome" is a "fact-intensive" inquiry which generally "turns on the nature of the materials sought and the difficulty the employer will face in producing them" and is "not amenable to broad per se rules." *McLane*, 581 U.S. at 81 (citations omitted). A subpoena may be unduly burdensome if the opponent shows that "compliance threatens to unduly disrupt or seriously hinder normal operations of [its] business." *Amazon*, 2024 WL 3373514, at *4 (quoting *NLRB. v. Am. Med. Response, Inc.*, 438 F.3d 188, 193 n.4 (2d Cir. 2006)).

Austin Meat has not shown undue burden here for at least four reasons. *First*, although it protests that compiling the requested information would involve a searching review of its personnel files, it already conducted a similar review to produce the (incomplete) PDF spreadsheet it provided the EEOC. (*See* Riera Decl., Ex. D, at 39; *id.*, Ex. F, at 62–63; *id.*, Ex. H, at 76–77.) In response to the EEOC's request for a complete production, Austin Meat objected not to the undue burden in compiling the additional information, but on the relevancy and confidentiality grounds that I have already rejected. (*Id.*, Ex. H, at 76–77.) Austin Meat cannot argue that it would be too costly to re-review its personnel files when, on the first round of review, it made an incomplete production based on specious relevancy and confidentiality concerns. *Second*, Austin Meat does not show that production would "unduly disrupt or seriously hinder normal operations." *Am. Med. Response*, 438 F.3d at 193 n.4. Although Respondent asserts that its office manager "was unable to complete her regular tasks" during the two days she spent on the company's prior production, (Opp'n Br. at 18), "[i]nconvenience alone is inadequate" to demonstrate undue burden; rather, Respondent must identify "the probable negative consequences of insisting on compliance." *In re Evenstar Master Fund*, No. 20-MC-418, 2021 WL 3829991, at *13 (S.D.N.Y. Aug. 27, 2021). Austin Meat's submission does not

demonstrate that diverting a handful of days of its office manager's time unreasonably strained its operations in the past, nor that full compliance with the EEOC's request would do so in the future. *Third*, Austin Meat's decision to protract the EEOC's investigation by raising objections to the requests for production was its own; the company cannot manufacture undue burden by lodging objections that are unfounded and untethered from the Title VII standard and the relevant caselaw. *Fourth*, Austin Meat's description of the EEOC's subpoena as "unlimited in either scope, time or duration," (Opp'n Br. at 19), is simply not true—the EEOC's request is for specific information on Austin Meat's employees "from April 2020 to the present," (Riera Decl., Ex. I), and thus is limited in scope, time, and duration.

For these reasons, I find Austin Meat's arguments unavailing, and therefore grant the petition to enforce the subpoena as to Request 1.

### B.    *Request 9 (The Termination Request)*

EEOC's Request 9—the second request of the subpoena—is for Austin Meat to produce "all documents (including email, text, and chat) related to [Watson]'s termination." (Riera Decl., Ex. I.) Austin Meat's overall objection to this request is that Watson was not involuntarily "terminated," but instead left the company on her own accord. Watson, for her part, alleges this was a constructive discharge. In terms of the legal framework, Respondent objects to the relevancy of the request and argues the EEOC already has the requested information in its possession. Neither objection has merit.

#### 1.    Relevance

Documents relating to Watson's separation from Austin Meat are clearly relevant to EEOC's investigation into her allegations of discriminatory constructive discharge. Respondent's argument to the contrary—that Watson left the company on her own accord—is a legal conclusion that is premature at the investigatory stage of the proceedings. As discussed, the

13

EEOC may request all documents relevant to its investigation, and need not "substantiate" the truth of the underlying allegations before requesting documents in connection with an investigation, "the purpose of which is to determine whether there is reason to believe those allegations are true." *Shell Oil*, 466 U.S. at 71.  In other words, Respondent cannot object to a subpoena by claiming the underlying allegations are false.  Instead, the documents themselves will form the evidentiary basis of a later determination concerning whether Watson's allegations are true.  Respondent's relevancy objection is therefore invalid.

### 2. Information in EEOC's Possession

Respondent next argues that, in part because Watson was not "terminated," the EEOC already possesses documents that are responsive to the Termination Request.  To enforce a subpoena, the EEOC must show "the information sought is not already within [its] possession." *UPS*, 587 F.3d at 139 (citation omitted).  Although Respondent argues it has produced "supporting documents demonstrating [Watson] abandoned her job duties including [her] attendance sheet," (Opp'n Br. at 11), these documents are not fully responsive to the EEOC's request for "all documents (including email, text, and chat) related to [Watson's] termination"—that is, her separation from Austin Meat, (Riera Decl., Ex. I.).  The word "termination" means "end in time or existence" or "conclusion," and even in this employment-related context does not refer only to involuntary terminations. *Termination*, Merriam-Webster, https://perma.cc/X6NZ-GVMU.  The subpoena's request is for documents related to the "end" of Watson's employment, regardless of whether Watson's allegation of constructive discharge is true.  As the EEOC points out, Respondent does not claim that the information it has produced is all of the information in its possession relating to the end of Watson's employment.  (*See* Pet'r Br. at 17 n.5.)  Thus, the EEOC does not currently possess all of the information it has requested.

### V.     Conclusion

For the foregoing reasons, it is hereby:

**ORDERED** that the EEOC's Petition to enforce the administrative subpoena is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondent comply with EEOC Subpoena No. NY-A23-007 in full and in a manner consistent with this Opinion & Order by **November 11, 2024**.

**IT IS FURTHER ORDERED** that if Petitioner seeks reasonable costs expended in this action, Petitioner shall submit a supplemental affidavit regarding costs, and a concise explanation of my legal authority to award costs, by **September 26, 2024**.  Respondent may file a response by **October 10, 2024**.  No reply shall be filed unless I request one to be filed.

The Clerk of Court is respectfully directed to terminate any pending motions and to close the case.

SO ORDERED.

Dated: September 12, 2024
      New York, New York

                                      Vernon S. Broderick
                                      United States District Judge